UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20607-CIV-DUBÉ

**CONSENT CASE**

LUIS LEON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

### MEMORANDUM ORDER

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #18, #19) and the Motion for Summary Judgment filed by the Defendant (D.E. #20) pursuant to the consent of the parties and an Order of Reference entered by the Honorable Paul C. Huck, United States District Judge. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Luis Leon (hereinafter "Leon" or "Plaintiff").

### I. FACTS

On August 8, 2005, the Plaintiff filed applications for disability insurance benefits and supplemental security income.[1] (R. 22, 122-126). The applications which asserted disability as of October 11, 2003 were denied initially and on reconsideration. (R. 31-34, 53-56, 62-64). Following a hearing on November 15, 2007 (R. 277-324), the ALJ issued a decision denying the request for benefits. (R. 16-28). A request for review filed with the Appeals Council was denied. (R. 7-9).

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

At the hearing on November 15, 2007, counsel for the Plaintiff raised objections to Exhibits 13F and 14F (Drs. Ritchie and Troyano not including their consultative examinations in the record although they mentioned that they had seen the Plaintiff) and Exhibit 12F (Dr. Cusco did not include an RFC with his examination). Counsel for the Plaintiff further points to all three reports missing "several different things." (R. 281-282).

The Plaintiff, age 55 at the time of the hearing, testified he is divorced and lives alone, although he has two daughters over the age of 18. (R. 286). Leon finished high school, one year of college and was in the U.S. Army National Guard from 1974 through 1980. (R. 287). Additionally, the Plaintiff stated he has not worked since his alleged disability on October 11, 2003. According to the Plaintiff, he became disabled after doctors from Workers' Comp told him that he was not a candidate for vertebras surgery in his neck. (R. 288-289). Leon stated he settled with Workers' Comp on February 3, 2005 for $30,000.00 and most of that money was spent on medicine and doctor visits. (R. 289).

The Plaintiff stated he has a driver's license and a 1993 Ford Town car, but does not drive much. Leon testified that in the past month he "maybe" drove four time. (R. 289-290). Leon also testified that friends get him food, do grocery shopping and laundry for him. Additionally, the Plaintiff stated he lives in a one story duplex, has a lady clean his house once every fifteen days, sometimes cooks, does wash the dishes, and has a laundry service do his laundry. (R. 290-291).

According to the Plaintiff, he is able to take care of his personal needs such as bathing and brushing his teeth. Leon's hobbies are "once in a while go to the computer and check [] e-mails" from his daughter. (R. 291). He does not belong to any social groups or church, watches movies at home and has not traveled outside the Miami area since the 80's when he went to Las Vegas on his

honeymoon. (R. 292).

The Plaintiff stated that his primary physician is Federico Dominico who was provided by his insurance carrier, Preferred Care and Medical Plan. (R. 292-293). Leon's first visit with Dr. Dominico was on August 9th and has only seen him twice because he recently joined Preferred Care. (R. 293).

According to the Plaintiff, he last worked in 2002 for a couple of days at Tuesday Morning as an assistant manager, and his job included unloading trucks. (R. 293-294). He left this job because he was injured. Before working at Tuesday Morning, he worked for seven years at El Dorado Furniture as a sales consultant. (R. 294). His job included receiving people, selling furniture, and moving furniture in the warehouse. (R. 294-295). Prior to El Dorado Furniture, Leon worked at City Carpet and Supplies as a carpet installer, which included receiving merchandise, unloading trailers and installing carpet and linoleum floor tile. (R. 295). Additionally, the Plaintiff stated that he has been working since 1961 and prefers to be working right now. (R. 305).

When asked by the ALJ why he felt he was unable to work, the Plaintiff responded by stating that he spent eight days in a row in bed, he is unable to stand for too long, he can't drive because he is unable to move around while driving, his memory is failing him, his nerves are a wreck and his hands sometimes shake. (R. 295-296). Leon testified that he took a taxi to get to the hearing. (R. 295). The Plaintiff testified he stopped taking his medications in November 2006 because he can not afford them. (R. 297).

Additionally, the Plaintiff testified that he could sit without moving around and stand for ten minutes, and walk just around his one-bedroom apartment and outside twice a week to throw out the garbage. (R. 297-298). The Plaintiff also testified the four finger tips in his left hand get very numb,

and once in a while, his arm gets numb. (R. 298). Leon has no problems with his feet, is able to lift a half gallon of milk and has not carried anything since his accident. (R. 298-299). His memory problems developed "right after the accident because of the depression and everything." (R. 299). According to Leon, his mother "was alive then and she was in a wheelchair so I had a lot of pressure on me and started losing it, I guess." (R. 299).

Counsel for the Plaintiff asked Leon to state the primary reason he was unable to work, to which Leon responded: his mental ability, pain in his back, lower back, side, neck, and back of neck, and headaches. Leon stated that the pain is very sharp and affects his ability to concentrate. (R. 300). According to the Plaintiff, he is unable to read and can only watch television for an hour or two, but does not remember what he watched the following day. (R. 300-301).

The Plaintiff testified his first neurologist was Dr. Luftgarden, who told him that he was unable to work. Then he saw Dr. Hall on October 11, 2003, who told him that he could "try light work." Next Leon was treated by Workers' Comp and now he sees Dr. Dominico. (R. 301). Leon testified that Dr. Dominico is waiting to perform more tests, but the last time he went to see him, Dr. Dominico was not there and he was seen by another doctor from the clinic who recommended the following tests: urinalysis, blood work, and x-rays of the lungs and back. (R. 302).

According to the Plaintiff, his day consists of watching "a little bit" of television, checking his e-mails and going to bed. Leon testified he sleeps two to four hours in the morning because he gets up around 3:00-4:00 a.m. Counsel for the Plaintiff stated that on February 1, 2006, a report completed by New Horizons[2] gave Leon a GAF score of 40 and mentioned that he was afraid to go out, had appetite disturbance, insomnia, poor concentration, hopelessness, and worthlessness, which

---

2. According to the Plaintiff, New Horizons is a government agency which provides care for the mentally ill. (R. 304).

were probably related to the accident. (R. 303). Counsel for the Plaintiff further stated that on August 16, 2006, notes from New Horizons stated that Leon was less depressed, but still hopeless and helpless. (R. 303-304). The Plaintiff testified he stopped going to New Horizons in November 2006 due to his mother passing away. (R. 303).

When asked by his attorney if his "feeling changed over the last" year, Leon responded as follows: "I haven't been able to get any help so a I guess it's getting worse. It's not getting any better." (R. 304). The Plaintiff testified that he tried to commit suicide in 1992 and that the idea "has come up" again. (R. 304).

In addition to the Plaintiff's testimony, Susan Lazarus, a vocational expert testified at the hearing. (R. 305). The VE stated that the Plaintiff's past work as an assistant manager would not qualify as past relevant work because he did not do that job long enough. (R. 307). The VE described the Plaintiff's past relevant work as a furniture salesperson, DOT #270.357-030, semiskilled, light with an SVP of 4; carpet layer, DOT #864.381-010, skilled, heavy with an SVP of 7; tile installer, DOT #869.684-026, medium with an SVP of 4. (R. 309). According to the VE, if the Plaintiff's testimony if fully credible, then there are no jobs that he would be able to perform. (R. 313).

>The ALJ posed the following hypothetical to the VE:
>
>> ... the claimant can stand for six hours out of an eight-hour day with normal breaks, walk six hours in an eight-hour day with no breaks. Sitting six hours in an eight-hour day with normal breaks. Being able to lift or carry 20 pounds occasionally, ten pounds frequently. Pushing and pulling 20 pounds occasionally, 10 pounds frequently. Never climbing ropes, ladder or scaffolding. Occasionally climbing stairs. Occasionally balancing, stopping kneeling, crouching, crawling and no other exertional impairments and with regard to no particular environment impairments, with non exertional, basic mental work related activities, although occasionally, let's see, let me do it two ways. Difficulties with concentration and memory. The claimant

> remains able to understand simple instructions, remember simple instructions, carry out simple instructions, make simple work related decisions, respond appropriately to supervision, respond appropriately to coworkers, respond appropriately to usual work situations and handle change in work settings appropriate on a sustained and continuing basis.

(R. 314). The VE responded that such a person would only be able to perform simple instructions not detailed or complex. (R. 314-315). The ALJ then asked if given the same hypothetical with no mental impairment. The VE responded that such a person would be able to perform the Plaintiff's past relevant work as a furniture salesperson. (R. 315).

The ALJ then posed a third hypothetical to the VE, as follows:

> ... the same exertional limitations and the non exertional limitations being simple instructions and simple, understanding, remembering and carrying out simple instructions.

(R. 315). The VE responded that such an individual would not be able to do semiskilled or skilled work. Lazarus added that to the "most extent it would have to be mostly unskilled work." (R. 315).

Counsel for the Plaintiff, posed a hypothetical to the VE in which a person with a high school education or more, with the limitations given in the ALJ's previous hypothetical, including occasional lapse of memory and concentration, and asked if said person can perform any sedentary jobs. (R. 318). The VE responded that such a person would be able to perform routine and repetitive work in the unskilled sedentary or unskilled light categories. (R. 318-319).

Plaintiff's counsel next asked if an individual would be able to sustain any job in the national or regional economy who can "only sit or stand six hours in an eight-hour day and for two hours has to either take breaks, or unscheduled breaks or has to lie down." The VE responded, "no." (R. 320). Next, counsel for the Plaintiff asked if a person who misses two days per month would be able to sustain an "unskilled" position. The VE responded, "probably not," but it depends on the employer.

6

(R. 322).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

On November 30, 2007, the ALJ issued a decision finding that the Plaintiff had severe impairments of Diffuse Cervical Disease and depression. The ALJ further found that the Plaintiff's impairments did not, singly or in combination, meet or equal the severity in the listing of impairments. (R. 24). The ALJ also found the Plaintiff did retain the residual functional capacity to perform the full range of light work. (R. 26). The ALJ found that the Plaintiff could return to his past relevant work as a furniture sales person. (R. 27). As such, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Regulations. (R. 28).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its

entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry

ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The Plaintiff's sole point of contention is that the ALJ's residual functional capacity determination is not supported by substantial evidence. Specifically, the Plaintiff contends that the ALJ did not discuss the Plaintiff's functional limitations or restrictions, nor did he assess his work-related abilities on a function-by-function basis.

The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels

of work, sedentary, light, medium, heavy, and very heavy." <u>Freeman v. Barnhart</u>, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

The Regulations also state as follows:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

With regard to the Plaintiff's RFC, the ALJ determined that Leon retained the residual functional capacity to perform a full range of light work and stated twice in his report that one of the Plaintiff's treating physicians had determined that Leon had reached MMI of 8% and recommended light duty work. (R. 25, 27). Additionally, the ALJ stated that there was "no major disagreement between the claimant's treating physicians and the agency consulting physicians. Both groups reach the conclusion the claimant can perform light work." (R. 27).

The ALJ went on to conclude as follows:

> Based on a hypothetical question propounded by me based on the Residual Functional Capacity Assessment contained in exhibit 14F, except Balancing, Stooping, Kneeling and Crawling only occasionally rather than frequently, the vocational expert after reviewing the file and being [given] the opportunity to have the claimant answer any additional questions concerning his vocational background testified that a person with the same vocational background as the claimant could perform this past relevant work. I so find.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. I accept the testimony of the vocational expert that the claimant could perform the past relevant work as actually performed or as generally performed in the national economy.

(R. 27).

This Court agrees with the Plaintiff that the ALJ erred in his RFC determination. First, SSR 96-8p (4) instructs the ALJ to perform a function-by-function analysis before determining that the Plaintiff could perform a full range of light work. Additionally, there is little evidence in the record to suggest that the Plaintiff's treating physicians and the agency consulting physicians were in agreement as to the Plaintiff's ability to perform work. Specifically, this Court points to evidence used by the ALJ in his determination. (R. 25-27).

On September 23, 2004, treatment notes from Anthony J. Hall, M.D. of the South Florida Neurosurgical Institute, Inc. reveal Dr. Hall's plan as follows: "I would recommend COX-2 inhibitors, exercise, pain pills, try light duty work. I think he is at MMI with an 8% PPI." (R. 233).

On September 25, 2005, a Physical Residual Functional Capacity Assessment form was completed. (R. 242-249). The assessment's primary diagnosis was listed as a herniated disc at C6-5; secondary diagnosis was listed as a herniated lumbar disc; and other alleged impairments were listed as bilateral facet syndrome, headaches. (R. 242). The assessment reported that the Plaintiff could occasionally lift/carry up to 50 pounds and frequently lift/carry up 25 pounds. It stated that the Plaintiff could stand and/or walk and sit for about 6 hours in an 8 hour workday; and is not limited in pushing and/or pulling. (R. 243). Further, the report stated that the Plaintiff had no postural, other than occasionally stooping, and no manipulative, visual, communicative or environmental limitations. (R. 244-246).

A second Physical Residual Functional Capacity Assessment was completed on December 13, 2005, which listed the Plaintiff's primary diagnosis as diffuse cervical disc disease; secondary diagnosis as hypertension; and no other alleged impairment. (R.250-257). The assessment reported

that the Plaintiff could occasionally lift/carry up to 20 pounds and frequently lift/carry up 10 pounds. It stated that the Plaintiff could stand and/or walk and sit for about 6 hours in an 8 hour workday; and is not limited in pushing and/or pulling. (R. 251). The assessment also reported that the Plaintiff could never climb ladders/ropes/scaffolds; occasionally climb ramp/stairs and crouching; and frequently balance, stoop, kneel and crawl. (R. 252). Additionally, the report stated that the Plaintiff had no manipulative, visual, communicative or environmental limitations. (R. 253-254). Further, the assessment noted that the Plaintiff has medically determinable impairments (MDI) and some functional loss, and concluded that Leon's "allegations are consistent with clinical and non medical findings in the MER" (medical evidence of record). (R. 255).

This Court finds that the ALJ never performed the required function-by-function analysis before determining that the Plaintiff could perform a full range of light work, and thus, error is present. This Court also notes that Dr. Hall's suggestion that the Plaintiff "try light duty work" cannot be construed as Dr. Hall's medical opinion that the Plaintiff is able to perform said work. Additionally, unlike the ALJ's finding that the opinion evidence has "no major disagreement," this Court finds the contrary. As noted above in detail, the Physical RFC Assessment completed on September 25, 2005, found that the Plaintiff was able to perform medium work and limited only to occasionally stooping, while the second Physical RFC Assessment found that the Plaintiff was able to perform light work and limited only to occasionally climbing a ramp/stairs and crouching; and frequently balance, stoop, kneel and crawl. Therefore, it cannot be said that the evidence of record provided "no major disagreement."

It is the opinion of this Court that the ALJ erred in his RFC determination for the reasons set forth above. On remand the ALJ should properly evaluate the Plaintiff's functional limitations or

restrictions, and assess the Plaintiff's work-related abilities on a function-by-function basis.

## III. CONCLUSION

Based on the foregoing, this Court finds that the decision by the ALJ and the Appeals Council is not supported by substantial evidence and that the correct legal standards were not applied. Accordingly, it is ORDERED AND ADJUDGED as follows:

(1)    The Motion for Summary Judgment filed by the Plaintiff (D.E. #18, #19) is **GRANTED in part**.

(2)    The Motion for Summary Judgment filed by the Defendant (D.E. #20) is **DENIED**.

(3) The decision of the Commissioner is **REVERSED and REMANDED** for further proceedings consistent with this opinion.

**DONE AND ORDERED** this \_\_\_16\_\_\_ day of November, 2009.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE